509 P.2d 222

James H. KEPNER and Shirley Kepner, husband and wife, and Walter James Kepner, a minor, By and Through his next friend James H. Kepner, Appellants,

v.

The WESTERN FIRE INSURANCE COMPANY, a Kansas corporation, Appellees.

No. 10884–PR.

Supreme Court of Arizona, In Banc.

April 27, 1973.

Rehearing Denied May 22, 1973.

---

Jack M. Anderson and John S. Schaper, Phoenix, for appellants.

Renaud, Cook, Miller & Cordova by James M. Videan, Phoenix, for appellees.

STRUCKMEYER, Justice.

This is an appeal by James H. Kepner and Shirley Kepner, his wife, in behalf of Walter James Kepner, their four-year-old son, arising out of litigation to recover damages for an injury suffered by Walter Kepner. In garnishment proceedings, the Superior Court entered judgment in favor of garnishee-defendant, The Western Fire Insurance Company. The Court of Appeals, Division One, reversed, 16 Ariz.App. 549, 494 P.2d 749 (1972). Opinion of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

The facts necessary to resolve this lawsuit establish that Harry and Velma Kepner were the owners of real property at 5733 North 7th Street in Phoenix, Arizona. The property was used as their home and by Harry Kepner as an office for a busi-

ness known as Harry's Pool Service. A homeowner's policy of insurance was carried with The Western Fire Insurance Company, providing for comprehensive personal liability coverage. In it, Western agreed to pay all sums which the Kepners became legally obligated to pay as damages because of bodily injury or property damage. Western also agreed to "defend any suit against the insured alleging such bodily injury or property damage and seeking damages *which are payable under the terms of this policy*, even if any of the allegations of the suit are groundless, false or fraudulent." The policy did not apply *"to any business pursuits of an insured * * * ."* (All emphasis added.)

While a carport at the Kepner residence was being enclosed for use as an office for the pool service, Walter Kepner, grandson of Harry and Velma Kepner, sustained an injury through the use of a power saw being operated by an employee of Harry Kepner. An action was brought to recover damages for the personal injuries to Walter, but *no reference was made in the complaint to the fact that the power saw was being used at the time of the accident in the business activity of Harry's Pool Service.* The ground of negligence asserted to be material here, although others were specified in Walter's complaint, is that Harry and Velma Kepner permitted Walter to be in close proximity to a dangerous instrumentality, the power saw.

On these facts, Western denied liability and refused to defend the suit. The Globe Indemnity Company, with whom the Kepners had a business policy, thereafter entered upon the defense of the suit and ultimately settled during the course of the trial for less than the final judgment, taking from the plaintiffs a covenant not to execute.

After judgment, a writ of garnishment was issued and served on Western seeking to satisfy the balance owed on the judgment. On tender of issue, the Superior Court found: "[T]he accident * * * occurred on the insured premises upon which a business pursuit * * * was

being conducted and that the injury occurred in an accident arising out of such business." Judgment in the garnishment proceeding was entered in favor of Western, and this appeal followed. For the reasons hereinafter set forth, the judgment of the Superior Court is affirmed.

■ It is a well established principle of law that the parties to an agreement of insurance may contract for any lawful coverage and that an insurance company has the right to limit its liability and to impose conditions and restrictions upon its contractual obligations not inconsistent with public policy. *See, e.g.*, Gottula v. Standard Reliance Ins. Co., 165 Neb. 1, 8–9, 84 N.W.2d 179, 184 (1957).

Western's policy is low premium protection designed to insure a homeowner against the hazards arising out of the operation and maintenance of his home. In this type of policy, certain risks are specifically excluded because they are not embraced within the course of a homeowner's normal activities. Business activities present additional risks over and beyond the ordinary and usual hazards to be found in the operation and maintenance of a home. Callahan v. American Motorists Ins. Co., 56 Misc.2d 734, 289 N.Y.S.2d 1005 (Sup.Ct.1968). They are not within the contemplation of or intended to be within policy coverage. Hence, whether the Kepners were personally negligent in their non-business activities is not a relevant factor in the determination of this case. For, irrespective of their negligence proximately causing the accident, the resulting injuries arose out of carrying on a business pursuit, without which the injuries could not have occurred.

■ Appellants do not question the language of the policy as excluding *business* activities from coverage, nor do they question the fact that the power saw was being used in a business activity within the meaning of the policy. Their position is that an insurer may not refuse to defend against a suit which on the facts pleaded in the complaint would be covered by the

policy when other facts, which do not appear in the complaint, would exclude coverage.

The decisions concerning when it is the duty of an insurer to defend have been collated in an extensive annotation in 50 A. L.R.2d 458 (1956), "Allegations in third person's action against insured as determining liability insurer's duty to defend." Concededly, the determination of whether to defend is frequently a difficult decision for the insurer, but as a generality it may be said, as the annotator states:

> "If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation." 50 A. L.R.2d at 464 (footnotes omitted).

The Arizona cases support the foregoing general statement. *See,* Cagle v. Home Ins. Co., 14 Ariz.App. 360, 483 P.2d 592 (1971); Tucson Public School Dist. No. One v. Home Insurance Co., 9 Ariz.App. 233, 451 P.2d 46 (1969); Lawrence v. Burke, 6 Ariz.App. 228, 431 P.2d 302 (1967); Paulin v. Fireman's Fund Ins. Co., 1 Ariz.App. 408, 403 P.2d 555 (1965).

Many distinctions have been drawn, some dependent upon the language of the various policies' provisions and some upon the facts of the particular case. The distinction here is that the alleged facts ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage. We hold that in this situation there is no absolute duty to defend for these reasons:

First, under modern practices, such as the Federal Rules of Civil Procedure, followed in Arizona, the complaint serves a notice function and is framed before discovery proceedings crystalize the facts of the case. The trial focuses on the facts as they exist rather than on facts which might exist under the theory of recovery in the complaint. Accordingly, the duty to defend should focus upon the facts rather than upon the allegations of the complaint which may or may not control the ultimate determination of liability. *See, e.g.,* United States Fidelity & Guar. Co. v. Baugh, 146 Ind.App. 583, 257 N.E.2d 699 (1970).

Second, there are many cases, such as here, where the allegation of facts in the complaint, even if proved, will not be decisive as to the obligation of the insurer to pay the resulting judgment. The proof of negligence proximately causing Walter Kepner's injuries justifies a judgment favorable to him, but the fact that the insureds' policy excludes coverage is irrelevant and could not be shown at the trial. As the Supreme Court of Iowa said in the recent case of New Hampshire Ins. Co. v. Christy, Iowa 200 N.W.2d 834, 838 (1972):

> "The allegations in a pleading are not, in all circumstances and situations, the decisive factor in determining whether there exists a duty on the part of the insurance company to defend. This is especially true when the duty to defend depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the pleading."

In the instant case, the trial of the negligence action did not resolve the factual issue of whether the accident fell within the exclusionary clause of the policy; further litigation was required to fix the responsibility for payment of the judgment and would have been required even if the insurer had undertaken the defense.

Third, it is to be recognized there are cases where, if on the facts the insurer has reason to believe the policy does not cover the insured, the interests of the insured and insurer may diverge. Several recent cases recognize that the insurer should not then control the defense. Glens Falls Ins. Co. v. American Oil Co., 254 Md. 120, 254

A.2d 658 (1969); Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970).

In Glens Falls Ins. Co. v. American Oil Co., the court said:

"To require the insurer to defend, under the circumstances of the present case, would put both the insurer and the insured in the untenable position of attempting to cooperate in the conduct of the litigation when their interests were, in fact, adverse." 254 Md. at 135, 254 A.2d at 666.

In Burd v. Sussex Mutual Ins. Co., the court said:

"There may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interest. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense. That was the situation in the case at hand." 56 N.J. at 389, 267 A.2d at 10.

Where there are facts which might exclude coverage, the insurer cannot always defend with complete fidelity. There must be a proceeding at which the insurer and the insured are each represented by counsel of their own choice to fight out their differences. Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action or proceedings on garnishment following the trial of the third party's action as in the instant case. Burd v. Sussex Mutual Ins. Co., *supra*. And *see*, Comment, "The Insurer's Duty to Defend under a Liability Insurance Policy," 114 U.Pa.L.Rev. 734 (1966). If the insurer refuses to defend and awaits the determination of its obligation in a subsequent proceeding, it acts at its peril, and if it guesses wrong it must bear the consequences of its breach of contract. Comunale v. Traders & General Ins. Co., 50 Cal.

2d 654, 328 P.2d 198 (1958); Grieb v. Citizens Casualty Co., 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 (1967).

For the foregoing reasons, the judgment of the Superior Court is affirmed.

HAYS, C. J., LOCKWOOD, J., and EINO M. JACOBSON, Court of Appeals Judge, concur.

Note: Vice Chief Justice JAMES DUKE CAMERON and Justice WILLIAM A. HOLOHAN did not participate in the determination of this matter. Chief Judge EINO M. JACOBSON and Vice Chief Judge HENRY S. STEVENS of the Court of Appeals, Division One, were called to sit in their stead.

STEVENS, Court of Appeals Judge (specially concurring).

First let me point out that while the Court of Appeals opinion was rendered in a case assigned to Division One of this Court it was wholly decided by the Judges of Division Two of this Court. Not having personally participated in the Court of Appeals opinion, I have no hesitancy in sitting with the Supreme Court on this review.

To my mind the critical question is the adequacy of the record to establish whether the grandmother's care of the minor child was a business activity or a home activity. I do not question that at the moment of the injury, the instrument which inflicted the injury was part of the business activities of the grandparents. In this aspect of the liability issue the grandmother was not an active participant. The business activity liability policy was issued by Globe Indemnity and Globe Indemnity fully performed its obligations under its policy. The grandmother's participation in the child's injury was her alleged negligence in failing to properly supervise the child. In my opinion the pleadings in the tort action and the issues framed in the garnishment here in question were broad enough to encompass this question. This was not expressly answered and we cannot

return the case to the trial court for this purpose.

Had there been an express finding that the grandmother's supervision of her grandson was a home activity, even though at the time of her inattention to the child she was answering a telephone call relative to the family business, and even coupled with the concurrence of business activity negligence, than I would be of the opinion that Western Fire refused to defend at its peril and should be held to pay under its homeowners policy.

The business activity insurer, Globe Indemnity, owed no duty to Western Fire to develop facts beneficial to Western Fire.

On the record under review, I concur.