574 P.2d 36

Oscar H. MANNY and Betty J. Manny, husband and wife, surviving parents of David H. Manny, Deceased, Appellants,

v.

The ESTATE of Stanford H. ANDERSON, Deceased, Gayle Anderson, Administratrix of the Estate of Stanford H. Anderson, Deceased, and Gayle Anderson, surviving spouse of Stanford H. Anderson, Deceased, Appellees.

The ESTATE of Stanford H. ANDERSON, Deceased, Gayle Anderson, Administratrix of the Estate of Stanford H. Anderson, Deceased, and Gayle Anderson, surviving spouse of Stanford H. Anderson, Deceased, Appellants,

v.

AVEMCO INSURANCE COMPANY and/or Airway Casualty Company, Appellees.

No. 2 CA–CIV 2424.

Court of Appeals of Arizona, Division 2.

Sept. 19, 1977.

Rehearing Denied Dec. 5, 1977.

Review Denied Jan. 24, 1978.

Barber, Haralson & Kinerk, P. C. by Burton J. Kinerk, Tucson, for appellants Manny.

Harlan Heilman, Yuma, for appellants Anderson and appellees Anderson.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for appellees Avemco.

OPINION

HATHAWAY, Judge.

This is an appeal by the plaintiffs, survivors of David Manny, from an order setting aside a default judgment in a wrongful death action. The defendants, the Estate of Stanford H. Anderson and Gayle Anderson, surviving spouse and administratrix, are also appealing the order. The defendants' insurer is appellee, Airway Casualty Company, now known as Avemco Insurance Company, which successfully moved to vacate the default judgment against its insured.

The peculiar circumstances of this case are as follows. On August 28, 1973, David Manny and Stanford H. Anderson were killed in an airplane crash. David Manny was a student pilot who, at the time of his death, was allegedly receiving flight instruction from Mr. Anderson. Following the accident, the attorney for Anderson's estate contacted Anderson's insurer, Airway Casualty Company, concerning insurance coverage. The insurer stated that there was "no coverage for the claims made by passengers in the aircraft." The insurer then sent a letter to the attorney confirming the denial of coverage. The text of the letter is as follows:

"Dear Mr. Heilman,

In our phone conversation earlier this week I was very sorry to learn of the death of Mr. Anderson. As we discussed, the Insurance Policy provided to Mr. Anderson by way of his affiliation with the National Aero Club provides no coverage for claims made by passengers within the aircraft.

I am enclosing a speciment [sic] copy of the certificate wording which was issued to Mr. Anderson.

I would appreciate being advised of any claims made against Mr. Anderson's estate alledging [sic] his negligence as a factor in the accident. Meanwhile, if anything further is needed, please let me know.

Very truly yours,

AIRWAY INSURANCE."

On June 6, 1974, the attorney for the Mannys wrote to the insurer stating, "I am advising you that I am making a claim against the Anderson estate for the wrongful death of Mr. Manny. My interpretation of the policy is that coverage is provided for this claim since Mr. Manny was not a 'passenger' but was a student pilot, and Mr. Anderson was his instructor." The appellee replied as follows:

"Our policy provides liability coverage, excluding passengers. The definition of a passengers [sic], Conditions Part I(d), shows a passenger as any person while in, on or boarding the aircraft . . .

We have been furnished no information regarding the actual accident, but from what we have learned we assume that Mr. Manny was in the aircraft at the time it crashed.

The policy is written without passenger liability coverage. Further; exclusion three states that the insurance does not apply 'To bodily injury, sickness, disease or death of any occupant or passenger in the aircraft . . .'

Due to the nature of the insurance contract it would be immaterial whether Mr. Manny had been a student, quest [sic] or pilot in the aircraft; there is no liability coverage for any person *in* the aircraft. I trust this will adequately define the coverage of the policy.

AIRWAY INSURANCE

Very truly yours,

J.N. Beers

Vice President-Claims."

On June 24, 1975, the Mannys brought a wrongful death suit against appellants Anderson. The complaint alleged that ". . . [T]he decedent Stanford H. Anderson knew or should have know [sic] that the aircraft provided plaintiffs' decedent for training was defectively designed and highly dangerous and unfit for use as a training aircraft; that as a result of the negligent acts and omissions of Stanford H. Anderson . . . David H. Manny was killed . . ." On July 28, 1975, appellants Manny and the Estate of Anderson entered into a covenant not to execute pursuant to which the Andersons assigned to the Mannys all rights the Andersons might have against their insurance company for failure to defend. A default was entered on January 23, 1976, and on February 6, 1976, a default judgment in the amount of $900,000 was filed. The appellee-insurer was first informed of the lawsuit and default on May 4, 1976, and moved to vacate the judgment and set aside the default on May 11, 1976. Gayle Anderson moved to strike appellee's pleadings on the ground that appellee's attorneys were not authorized to file any pleadings on her behalf and did not represent her. After the lower

court vacated the default judgment, Anderson's administratrix and the Mannys both appealed.

■ This case presents some difficult and close questions. The right of an insurer to move to set aside a default judgment against its insured has been recognized. *Camacho v. Gardner,* 104 Ariz. 555, 456 P.2d 925 (1969); *Sandoval v. Chenoweth,* 102 Ariz. 241, 428 P.2d 98 (1967). This right, however, is not without some important qualifications. If the insurer breaches its contract by refusing to defend, and the insured then retains counsel and protects himself, the insurer cannot later enter the case without the insured's permission. *Edler v. Edler,* 9 Ariz.App. 140, 449 P.2d 977 (1969); *Witt v. Universal Automobile Ins. Co.,* 116 S.W.2d 1095 (Tex.Civ.App.1938); 45 C.J.S. Insurance § 933 (1946).

■ The issue before us is whether the insurer's conduct in this case amounted to a refusal to defend. First of all, we point out that if the appellee-insurer was correct in its conclusion that there was no coverage[1] then it was not liable to pay the judgment and there was no contractual obligation to defend. *Tucson Public School District Number One v. Home Insurance Company,* 9 Ariz.App. 233, 451 P.2d 46 (1969); *Paulin v. Fireman's Fund Insurance Company,* 1 Ariz.App. 408, 403 P.2d 555 (1965). We must decide whether, in the event that coverage does exist, the appellee's actions constituted a breach of its contractual obligation to defend. There was not an explicit refusal to defend. However, the insurer denied coverage three times and made no efforts to investigate the accident or settle the case. In its letters denying coverage, it did not indicate that it was willing to defend.

■ We hold that there was no breach of the obligation to defend because the insurer did not clearly indicate that it was unwilling to defend. If there was a breach of contract due to refusal to defend, it must have been an anticipatory repudiation because the obligation to defend does not arise until the insurer is presented with a complaint. See *Pesqueria v. Factory Mutual Liability Insurance Company of America,* 16 Ariz.App. 407, 493 P.2d 1212 (1972); *Paulin v. Fireman's Fund Insurance Company,* supra; *Lawrence v. Northwest Casualty Company,* 50 Wash.2d 282, 311 P.2d 670 (1957); Corbin on Contracts, § 968, Vol. 4, p. 880 (1951).

As stated by an authority on contracts, "In order to constitute an anticipatory breach of contract, there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives." Corbin on Contracts, § 973, Vol. 4, p. 905 (1951). In the instant case, although the insurer denied coverage, it did not expressly refuse to defend. Instead, in the letter to the attorney for the estate, the vice-president in charge of claims stated, "I would appreciate being advised of any claims made against Mr. Anderson's estate alledging [sic] his negligence as a factor in the accident. Meanwhile, if anything further is needed, please let me know."

Our conclusion is supported by the following distinctions between the instant case and the existing authority. In *Edler v. Edler,* 9 Ariz.App. 140, 449 P.2d 977 (1969), a mere denial of coverage without an express refusal to defend was held to be a breach that would have justified the insured in taking steps to protect himself and in excluding the insurer from the defense of the suit. This case is distinguishable from the instant situation because there was no doubt that the insurer intended to refuse to defend. The insurer had viewed the complaint before denying coverage and had failed to take any action to defend although it knew that suit had been filed.

There have been cases where an insurer which denied coverage before any complaint was filed was held liable to pay a settlement made by the insured even though the insured had not notified the company of the settlement prior to its com-

---

1. An independent action is now pending in which the coverage issue will be decided.

pletion. In these cases, unlike the case before us, the insurer was not attempting, as here, to enter upon a defense of the action but rather was simply seeking to avoid paying the settlement. E. g., *Waugh v. American Casualty Company*, 190 Kan. 725, 378 P.2d 170 (1963); *Keating v. Universal Underwriters Insurance Company*, 133 Mont. 89, 320 P.2d 351 (1958); Annotation, 67 A.L.R.2d 1086 (1959).

There is one case in which a denial of coverage precluded the company from defending. *Great American Indemnity Co. v. City of Corpus Christi*, 192 S.W.2d 917 (Tex. Civ.App.1945). In *Corpus Christi*, the insurer offered to defend and the court found that the insured was not bound to accept this offer. The case, however, turns upon a set of facts not present in the instant case. In *Corpus Christi*, supra, the insurer, in undertaking the defense, would have had to investigate factual issues, with the possibility of discovering something which might negate coverage. The Texas court's holding that the insurer was precluded from undertaking the defense can be explained on the basis of this conflict of interest. However, in the instant case, the issue of coverage is entirely a matter of interpreting the policy to determine whether a student pilot is a "passenger" falling within the exclusion of coverage for passengers.

The appellants-Manny have no standing to object to the insurer's entry into the case. However, this poses no problem because the appellants-Anderson are also appealing in order to object to the insurer's participation. We must conclude that the insurer had standing to seek to reopen the default against its insured.

Affirmed.

HOWARD, C. J., and FROEB, J., concur.